Case:09-30002-SDB Doc#:336 Filed:07/17/12 Entered:07/17/...

FILED
Lucinda B. Rauback, Acting Clerk
United States Bankruptcy Court
Augusta, Georgia
By jpayton at 2:04 pm, Jul 17, 2012

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Dublin Division

| | |
|---|---|
| IN RE: ) | Chapter 11 Case |
| ) | Number 09-30002 |
| Marie B. Gillis ) | |
| ) | |
| Debtor ) | |

## OPINION AND ORDER

Pursuant to 11 U.S.C. §554, Marie B. Gillis ("Debtor") seeks to abandon property to the Bank of Dudley ("Bank") in full satisfaction of the Bank's claim. The Court has jurisdiction pursuant to 28 U.S.C. §1334, and this is a core proceeding under 28 U.S.C. §157(b)(2)(A) and (O). For the following reasons, I find the Debtor cannot abandon the property in full satisfaction of her debt to the Bank.

## FINDINGS OF FACT

On October 29, 2009, the Debtor filed a Chapter 11 Plan of Arrangement ("Plan"). In the Plan, the Debtor listed the Bank as having a secured claim of $353,024.96 on 139.93 acres in Treutlen County, Georgia ("the Property" or "the Crystal Creek property"). Dckt. No. 94, Plan of Arrangement, p. 3. On April 2, 2010, the Debtor's Chapter 11 Plan was confirmed. On November 13, 2009, prior to confirmation, Debtor filed a motion to sell the Property through an auction with the proceeds to be applied

to the Bank's claim and the Debtor was to retain any surplus. The Court approved the sale by auction to be held January 31, 2010; however any surplus proceeds were to be paid into the registry of the Court. Order, Dckt. No. 137. The Bank was further authorized to begin advertising for a foreclosure sale if the Property did not sell at auction by January 31, 2010.

On April 25, 2011, a year after confirmation, the Debtor filed a Motion to Abandon the Property in full satisfaction of the Bank's claim. The Bank objected to the Motion, arguing the abandonment in full satisfaction is contrary to the Plan's language and the previous orders entered allowing the Bank to foreclose on the Property.

At the June 21, 2011 hearing, the parties disclosed that the auction sale never closed because of problems with the title of the Property. Subsequently, the Bank began pursuing its state law remedies, but the Superior Court for Laurens County has issued a temporary restraining order ("TRO") staying that proceeding. At the request of the parties, I continued the matter numerous times to afford the parties the opportunity to resolve the dispute and to allow the parties to file briefs on the Motion to Abandon Property.

2

## CONCLUSIONS OF LAW

At the hearing on the Motion to Abandon Property, the parties agreed that the terms of the confirmed Plan of Arrangement control this dispute, namely whether Debtor is allowed to abandon the Property and if so, whether the Bank is entitled to assert a deficiency claim. Dckt. No. 252, Hearing Held on Debtor's Motion to Abandon Property; Objection by Bank of Dudley; see also, 11 U.S.C. §1141(a) (stating that the provisions of a confirmed plan bind all creditors).

Article II of the Plan lists the Bank as the sole Class 2 creditor and provides that the Bank "shall retain all existing lien positions to the extent of value, $353,024.96 and shall be paid $353,024.96 with interest from the effective date of the plan at 5% per annum *through the liquidation through the sale or abandonment of the Crystal Creek property. . . .*" Dckt. No. 94, Plan of Arrangement, p. 3 (emphasis added). In considering this language, the initial issue was a grammatical issue of whether "liquidation through abandonment" could occur. Initially, Debtor's counsel contended that liquidation could only be accomplished through the sale of the Property. After being given the opportunity to fully consider and brief the matter, Debtor's counsel acknowledged that liquidation through abandonment could

occur thus waiving this argument. Dckt. No. 293, Brief in Support of Motion to Abandon Property.

Even without the waiver, I conclude under the language of the Plan, liquidation through abandonment can occur. The word "or" can be read conjunctively as well as disjunctively. See Noell v. Am. Design, Inc., 764 F.2d 827, 833 (11th Cir. 1985) ("[I]t is an established principal that '[t]he word 'or' is frequently construed to mean 'and,' and *vice versa*, in order to carry out the evident intent of the parties.'" quoting Dumont v. United States, 98 U.S. 142, 143 (1878))(emphasis in original). Additionally, ambiguous terms in a bankruptcy plan are construed against the drafter of the plan. E.g., In re Fawcett, 758 F.2d 588, 591 (11th Cir. 1985)("[T]he debtor as draftsman of the plan has to pay the price if there is any ambiguity about the meaning of the terms of the Plan.").

In this case, it is clear that the parties intended to sell the Property, but the Plan's language is broad enough to handle liquidation through an abandonment, which is what Debtor is now proposing.

Next, Article IV, Paragraph 7 of the plan provides:

> The Debtor shall strictly comply with the terms of this plan. In the event that the debtor defaults under payment schedule to a secured creditor, the creditor may exercise its right to foreclose under applicable State law. Unless otherwise expressly agreed to by a secured

4

> creditor, the Debtor may only cure a default and reinstate payments prior to the conclusion of a foreclosure sale by paying all out of pocket costs in full and bringing all arrearages current. *Any deficiency arising from the liquidation of collateral under applicable law shall be deemed an allowed claim entitled to treatment as a deficiency claim under terms of this Plan for the class which includes deficiency claims.*

Dckt. No. 94, Plan of Arrangement, p. 5 (emphasis added).

Debtor argues Paragraph 7 arises if Debtor defaults on her obligations under the Plan. Since abandonment is expressly provided for in the Plan, Debtor argues that she is not in default under the Plan. Therefore, Debtor contends abandonment does not fall within the purview of Paragraph 7, and the Bank is not entitled to assert a deficiency claim. Debtor argues the last sentence of Paragraph 7 cannot be taken out of context to entitle the Bank to assert a deficiency claim. Dckt. No. 293, Brief in Support of Motion to Abandon Property, p. 4.

The Bank disagrees and argues the language of Paragraph 7 and the Plan, as a whole, allows it to assert a deficiency claim. Furthermore, the Bank notes the Plan fails to explicitly state that abandonment would be in full satisfaction of its claim. Dckt. No. 291, Brief in Support of Amended Objection to Motion to Abandon Property, p. 3.

After considering the matter, I conclude the Bank is entitled to assert a deficiency claim. First, since the Plan is ambiguous as to the Bank's claim, the "cardinal rule" of plan interpretation is to ascertain the parties' intent. See generally, In re Texas Gen. Petroleum Corp., 52 F.3d 1330, 1335 (5th Cir. 1995) ("We apply the rules of contract interpretation to the interpretation of a plan of reorganization."); In re Beta Int'l, Inc., 210 B.R. 279, 285 (E.D. Mich. 1996) ("Interpretation of a Chapter 11 plan is basically a matter of contractual interpretation."). Paragraph 7 must be analyzed in the context of the entire Plan, including Paragraph 7. Black v. United States, 91 U.S. 267, 269 (1875). Furthermore, as previously discussed, ambiguities are construed against the Debtor. See In re Fawcett, 758 F.2d at 591.

The first sentence of Paragraph 7 requires the Debtor to strictly comply with the Plan's terms. The second sentence gives secured creditors the right to foreclose in the event of default, while the third sentence limits the Debtor's right to cure that default. The fourth, and final, sentence states that "any deficiency arising from the liquidation of collateral under applicable law shall be deemed an allowed claim entitled to treatment as a deficiency claim. . . ." Dckt. No. 94, Plan of Arrangement, p. 5.

6

Looking at the final sentence within the context of the entire paragraph, I am not persuaded that Paragraph 7 precludes the Bank from seeking a deficiency claim. As previously stated, liquidation through abandonment is possible. The final sentence allows a deficiency claim for "any deficiency arising from *liquidation* of collateral." Dckt. No. 94, Plan of Arrangement, p. 5 (emphasis added). Liquidation through abandonment falls within the scope of this provision. It is noteworthy that the Debtor uses the terms "foreclosure" and "foreclosure sale" in the second and third sentences of Paragraph 7. Dckt. No. 94, Plan of Arrangement, p. 5. The last sentence does not limit a deficiency claim to those arising through foreclosure. It is more general, stating *any* deficiency arising from *liquidation* of collateral shall be deemed an allowed claim entitled to treatment as a deficiency claim. If the Debtor wanted to limit a deficiency claim to deficiencies arising from successful foreclosure sales, she could have done so by drafting these terms into the paragraph's final sentence. Reading Paragraph 7 in conjunction with Paragraph 2, liquidation can occur through abandonment not just foreclosure.

Debtor's argument that a default of the plan has not occurred and therefore Paragraph 7 is not triggered does not take into consideration the facts of this case. Debtor and the Bank

7

AO 72A
(Rev. 8/82)

contemplated the Property would sell at auction. In the order authorizing the sale, the Bank was given relief from the stay to begin advertising for a foreclosure sale if the Property did not sell at the auction. Dckt. No. 137. The Property did not sell because of title problems and in accordance with the order, the Bank began to pursue its state law remedies but was stopped by the TRO. Before this state law process was concluded, Debtor sought to abandon the Property in full satisfaction of the Bank's claim to prevent a deficiency claim. The Plan did not state abandonment would be in full satisfaction of the claim and this Court's previous order authorizing the Bank to begin advertising for a foreclosure sale does not provide for abandonment in full satisfaction of the debt.

Furthermore, at the Plan confirmation hearing held February 9, 2010, Debtor was made aware of this ambiguity by the United States Trustee's objection to confirmation which states that "the Disclosure Statement and Plan should be amended to describe how the sale or foreclosure, if any, affects the proposed treatment of secured creditor Bank of Dudley." Dckt. No. 146. Debtor's counsel acknowledged the ambiguity in the Plan and entered into a stipulation resolving the objection stating "Debtor will amend Plan regarding treatment of secured creditor

8

Bank of Dudley." Dckt. No. 153, Stipulation Resolving U.S. Trustee Objection. Debtor never amended the Plan to clarify the proposed treatment. This shows that Debtor was aware of the ambiguity and failed to amend the Plan to clarify the proposed treatment. Debtor cannot now argue the language of the Plan allows her to abandon the Property in full satisfaction of the Bank's claim.

In accordance with the language of the Plan, Debtor is allowed to abandon the Property; however, the abandonment is not in full satisfaction of the entire indebtedness owed to the Bank. The Bank's loan is a recourse loan and upon resolution of the state law issues and any foreclosure proceeding, the Bank will be granted leave to assert a deficiency claim, if any. See In re Perry, 394 B.R. 852, 859 (Bankr. S.D. Tex. 2008)(allowing the debtor to abandon, but allowing the creditor to foreclose its lien and assert a deficiency claim); In re R-B-Co., Inc. of Bossier, 59 B.R. 43 (Bankr. W.D. La. 1986)(allowing abandonment; however, because plan was ambiguous, abandonment was not in full satisfaction of the debt). While Debtor is entitled to challenge the validity of any deficiency claim, she cannot argue the Plan prevents the Bank from filing a deficiency claim.

For the foregoing reasons, it is therefore ORDERED that the Motion to Abandon Property is GRANTED in part and DENIED in

9

part.  Debtor may abandon the Property and the Bank may assert a deficiency claim, if any.

*Susan D. Barrett*
SUSAN D. BARRETT
CHIEF UNITED STATES BANKRUPTCY JUDGE

Dated at Augusta, Georgia
this 17th day of July 2012.

10